UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARQUES LOVE, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:18-cv-01155-JPH-MPB |
| RICHEY, et al. | ) |
| Defendants. | ) |

**Order Granting Defendants' Motions for Summary Judgment
and Directing Entry of Final Judgment**

Marques Love, an inmate at Pendleton Correctional Facility in Pendleton, Indiana, brought this civil rights action pursuant to 42 U.S.C. § 1983. Mr. Love alleges that defendants Alisha Richey and Jennifer Schurman were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. He further alleges this Eighth Amendment violation was the result of a policy of inadequate training and supervision by defendant Wexford Health Sources, Inc. ("Wexford") regarding the timely treatment of serious medical conditions.

The defendants—Richey, Wexford, and Schurman—have moved for summary judgment. Mr. Love filed belated responses on January 27, 2020. The defendants' motions to strike the response as untimely and to stay the deadline to file a reply, are **denied**. For the reasons explained below, defendants' motions for summary judgment are **GRANTED**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A).

1

A party may also support a fact by showing that the materials cited by an adverse party do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II. Factual Background

Mr. Love has been incarcerated at the Pendleton Correctional Facility since 2007. Dkt. 47-2, p. 10. From June 2016 until February 2019, he participated in a program through the United

States Department of Labor ("DOL") where he learned trade skills involved in building maintenance and repair, including carpentry, plumbing, electrical, HVAC, welding, drywall, flooring, and painting. Dkt. 47-2, p. 11.

On August 23, 2017, Mr. Love and other members of the DOL program were assigned to clean and organize part of an old furniture factory. *Id.* A few hours into his shift, Mr. Love was struck in the back of the head by a metal beam, which cut open his scalp. *Id.* at 13. Blood poured from the back of his head and ran down his neck. *Id.* at 14. He saw a flash of white light but did not lose consciousness. *Id.* One of his coworkers saw the blood and told Mr. Love to go see the supervisor. *Id.* When the supervisor saw Mr. Love's injuries, she called the head of maintenance, Mr. Alberson, and asked him to walk Mr. Love to the infirmary. *Id.* at 14-15.

Mr. Love was still bleeding when he entered the infirmary fifteen minutes after his injury. Dkt. 47-1, pp. 2, 7. Mr. Love waited for 10-15 minutes in the infirmary, dkt. 69 at 3, before he was seen and treated by Nurse Richey, a licensed practical nurse and Wexford employee. Dkt. 47-1, pp. 1-3; dkt. 47-2, pp. 15-16. She instructed Mr. Love to wash his hair in the sink before she inspected his wound and measured his vital signs. Dkt. 47-1, pp. 1-2, 6; dkt. 47-2, p. 16. She administered a Tdap vaccine to prevent tetanus. Dkt. 47-1, pp. 2, 7; dkt. 47-2, pp. 16-17.

Nurse Richey evaluated Mr. Love for a possible concussion by administering a PERRLA exam, which stands for Pupils Equal, Round, Reactive to Light and Accommodation. Dkt. 47-1, pp. 2, 9. Nurse Richey could not fully administer the PERRLA exam, however, because Mr. Love's left eye is a prosthetic. *Id.* Nevertheless, she did not believe Mr. Love had a concussion because his non-prosthetic eye appeared normal, his gait was steady, his vitals were within normal limits, he had equal strength in both hands, and his speech was not slurred. *Id.*

After consulting with colleagues, Nurse Richey decided not to close the wound with stitches, staples, or medical glue because the benefit of doing so was outweighed by the increased risk of infection. Dkt. 47-2, p. 3. It would be better, she believed, to allow the wound to close naturally. *Id.* She did not provide Mr. Love with an antibiotic, bandage, or gauze to cover the wound while it healed, so Mr. Love used toilet paper to cover the wound until it scabbed over two days later. Dkt. 47-2, pp. 28, 32.

Before Mr. Love left the infirmary, Nurse Richey gave him a dose of acetaminophen for pain and a box of acetaminophen to take as needed over the next few days. Dkt. 47-1, p. 2; dkt. 47-2, p. 18. She also instructed Mr. Love to ice his wound periodically to prevent swelling. Dkt. 47-1, p. 2; dkt. 47-2, pp. 16, 19. Finally, she gave him a lay-in order for the remainder of the day and advised him to report his condition to the prison's medical department if his symptoms became worse. Dkt. 47-1, pp. 2, 3, 7, 9; dkt. 47-2, pp. 18-19. Mr. Love also procured an antibiotic ointment "from sources other than medical." Dkt. 69, p. 6.

Over the next few days, Mr. Love experienced severe headaches, sensitivity to light, and a decline in cognitive function including memory loss, diminished focus and attention, and an inability to perform basic math. Dkt. 47-1, pp. 3, 10; dkt. 47-2 pp. 24, 26, 29-30, 47-48. He continued to bleed from the back of his head, and he observed blood on his pillow for two days after his injury. Dkt. 47-2, pp. 28, 49.

Mr. Love reported these symptoms by filling out a Request for Health Care form on August 26, 2017. Dkt. 47-1, pp. 3, 10. He was examined by Dr. Paul Talbot on August 30, 2017. Dr. Talbot concluded that Mr. Love's condition had worsened over the past week and now included several alarming features, including heightened pain shortly after waking up in the morning, intermittent and persistent nausea, and vomiting. Dkt. 47-1, p. 12. He noted there were no signs of brainstem

or nuclear rigidity. *Id.* Dr. Talbot ordered a CT scan as soon as possible, referred Mr. Love to an on-site optometrist, ordered additional Tylenol for pain, and prescribed an oral antibiotic and a topical antibiotic ointment. Dkt. 47-1, pp. 11-20.

Mr. Love received a CT scan on September 1, 2017. He was scheduled for a medical visit on October 5, 2017, to discuss the results of his CT scan, but he refused the visit in order to return to work. Dkt. 47-1, p. 15; dkt. 47-2, p. 21-22. The CT scan revealed "no acute intracranial abnormality." Dkt. 2-1, p. 16.

Mr. Love was seen by an optometrist, Dr. Stephen Hill, on September 8, 2017. Dkt. 47-1, pp. 19-20. Dr. Hill diagnosed Mr. Love with photophobia, a concussion symptom involving eye pain in response to light, and prescribed eye drops to treat the condition. *Id.*

Most of Mr. Love's medical symptoms arising from his head injury have subsided. He stopped bleeding two days after the injury, and his wound did not become infected. Dkt. 47-2 at 28. He no longer has difficulty recalling memories or performing basic math, *Id.* at 47-48; though he does have periodic lapses in memory. Dkt. 69, p. 8, ¶ 58. There is no evidence that he continues to experience headaches, photophobia, or problems with attention and focus.

Mr. Love submitted an informal complaint about his medical treatment on August 27, 2017. Dkt. 2-1, p. 1. He submitted a formal grievance on September 14, 2017. *Id.* at 2. At that time, Mr. Love was already under the care of health care professionals. He submitted a follow-up to the grievance and requested an interview on September 25, 2017. *Id.* at 3. He submitted a grievance appeal on October 11, 2017, which defendant Schurman rejected as untimely. *Id.* at 4, 6-9.

Wexford maintains a Nurse Training Policy which all nursing staff, including Nurse Richey, are required to follow. Dkt. 47-1, pp. 24-28.

## III. Discussion

Mr. Love asserts Eighth Amendment medical care claims against the defendants. At all times relevant to Mr. Love's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "To determine if the Eighth Amendment has been violated in the prison medical context, [courts] perform a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotations omitted). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *see also Plummer v. Wexford*

*Health Sources, Inc.*, 609 F. App'x 861, 862 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal quotation omitted). "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.*

For purposes of summary judgment, the parties do not dispute that Mr. Love suffered a serious medical condition. He was sent to the infirmary because he was bleeding profusely from a head wound, and he later exhibited symptoms characteristic of a concussion. The issue is whether Nurse Richey, Schurman, and Wexford were deliberately indifferent to Mr. Love's serious medical condition.

1. Nurse Richey relied on her professional judgment when she treated Mr. Love's head injury.

Nurse Richey argues that she was not deliberately indifferent because she assessed Mr. Love's head injury, conducted concussion testing, provided over-the-counter pain medication, administered a Tdap vaccine, allowed him to clean his wound, instructed him to ice his wound periodically, and provided him with a lay-in for the remainder of the day. She considered closing the wound with stitches, staples, or glue, but after consulting with colleagues, she concluded that such tools would increase the risk of infection. She instructed Mr. Love to report his condition to the prison's medical department if his symptoms became worse.

Mr. Love has not presented any evidence that Nurse Richey failed to exercise professional judgment when she treated his head wound in the infirmary. There is no dispute that she relied on accepted medical protocols to treat his laceration and assess the likelihood of a concussion. During his deposition, Mr. Love expressed his displeasure with Nurse Richey's treatment because he "didn't even get a Band-Aid . . . Mr. Alberson suggested that I should get some stitches and . . . they ignored them and . . . I felt like they downplayed what was going on." Dkt. 47-2, p. 32. However, both Mr. Alberson and Mr. Love are laypersons with no medical training, and Nurse Richey was not required to follow their proposed course of treatment. Furthermore, Nurse Richey's treatment of Mr. Love's laceration proved successful—the laceration closed after two days.

Mr. Love's claim that his wound would have become infected without his own self care is, at best, speculative. It also underlines the fact that the laceration did not require additional professional attention. Although Mr. Love experienced symptoms indicative of a concussion days later, he did not present these symptoms at the time Nurse Richey examined him, and there is no evidence that Nurse Richey recklessly ignored tell-tale signs of a neurological injury.

2. <u>Schurman is not a medical professional, and he deferred to Mr. Love's medical team.</u>

There is no evidence that Schurman, a grievance specialist, has any form of medical education, training, or experience. By the time Mr. Love submitted his grievance appeal to Schurman on October 11, 2017, he was already under the care of Dr. Talbot and Dr. Hill. Dr. Talbot determined Mr. Love showed no signs of brain stem or nuclear rigidity, and he provided Mr. Love with pain medication and antibiotics. He also scheduled a CT scan which showed no intracranial abnormalities. Dr. Hill examined Mr. Love and prescribed eyedrops to treat his photophobia. There is no evidence that Schurman had any reason to believe that Dr. Talbot or Dr. Hill were ignoring Mr. Love's medical condition, and he deferred to their medical judgment and

8

expertise. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants . . . can rely on the expertise of medical personnel.").

3. <u>Wexford has an established policy for treating serious medical injuries.</u>

Because Wexford acts under color of state law by contracting to perform a government function, *i.e.*, providing medical care to correctional facilities, Wexford is treated as a government entity for purposes of Section 1983 claims. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). Therefore, to state a cognizable deliberate indifference claim against Wexford, Mr. Love must establish that he suffered a constitutional deprivation as the result of an express policy or custom of Wexford. Mr. Love must show that Wexford has: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a practice that is so widespread that, although not authorized by written or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused by a person with final policy making authority. *Estate of Moreland v. Dieter*, 395 F.3d 747, 758-759 (7th Cir. 2004). In addition, the failure to make policy itself may be actionable conduct. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017).

Wexford has an established nursing training policy. Mr. Love has presented no evidence that this policy inadequately prepares nurses to treat serious medical injuries in a timely manner, nor has he presented any evidence that he experienced a constitutional deprivation in this case.

In sum, all three defendants are entitled to summary judgment.

**IV. Conclusion**

For the reasons explained above, the defendants' motions for summary judgment, dkts. [46] and [50], are **granted**. The defendants' motion to strike the response as untimely, dkt. [70],

is **denied**. The defendants' motion to stay the deadline to file a reply, dkt. [71], is **denied as moot.**

Judgment consistent with this Entry shall now issue.

**SO ORDERED**.

Date: 2/4/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MARQUES LOVE
172964
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Ilene M. Smith
INDIANA ATTORNEY GENERAL
Ilene.Smith@atg.in.gov

Destiny Reve Scott Wells
INDIANA ATTORNEY GENERAL
destiny.wells@atg.in.gov

Jarod Zimmerman
KATZ KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com